UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------X
:
STEPHEN POWELL,                                         :
:
                                Plaintiff,  :
:             21-CV-1477 (VSB)
           -against-                             :
:             **OPINION & ORDER**
:
GARY SCOLLARD and THE HARVARD                           :
CLUB,                                                   :
:
                             Defendants.  :
:
-------------------------------------------------------X

Appearances:

Joel Wertheimer
Wertheimer LLC
New York, New York
*Counsel for Plaintiff*

Thomas Lai
New York City Law Department
New York, New York
*Counsel for Defendant Gary Scollard*

Stacey Lauren Seltzer
Larry H. Lum
Wilson & Chan LLP
New York, New York
*Counsel for Defendant The Harvard Club*

VERNON S. BRODERICK, United States District Judge:

      Before me are motions filed by Defendants the Harvard Club ("The Harvard Club" or "Harvard Club") and Gary Scollard ("Scollard," and together with The Harvard Club, "Defendants"), each made pursuant to Federal Rule of Civil Procedure 12(b)(6), seeking dismissal of the First Amended Complaint filed by Plaintiff Stephen Powell ("Powell" or "Plaintiff"). Because I find Powell's false arrest claim to be timely and the allegations sufficient

1

to plausibly allege a claim against The Harvard Club, its motion to dismiss is DENIED. However, because I find Detective Scollard had probable cause to arrest Plaintiff, making his actions privileged, his motion to dismiss is GRANTED.

### I. Factual Background[1]

Powell, a resident of the District of Columbia, is a former member of The Harvard Club, a not-for-profit corporation located in New York City. (FAC ¶¶ 11–12.) Powell was in D.C. on August 8, 2019. (*Id.* ¶¶ 14–17.) Despite this, certain Harvard Club employees caused Powell to be "accused of a theft at the Harvard Club" that took place that same day. (*Id.* ¶ 18.) These Harvard Club employees transmitted security video to the New York City Police Department ("NYPD"), and they "intentionally misidentified" Powell as the man in the video "because [they] had long standing animus towards" him. (*See id.* ¶¶ 19–22.)

The Harvard Club's report was referred to Defendant Gary Scollard, a detective working in a NYPD precinct located near The Harvard Club. (*See id.* ¶¶ 13, 35.) "The [Harvard Club's] identification [of Powell] – without any further investigation by the NYPD – induced and led to Mr. Powell's arrest." (*Id.* ¶ 25.) Accordingly, "[o]n October 16, 2019, Mr. Powell was arrested" on three grand larceny charges, two of which allegedly occurred "at the Harvard Club," and one of which allegedly occurred "at the University Club," which is located a few blocks from The Harvard Club in New York City. (*Id.* ¶ 27.) When Powell was notified of the charges against him, he "was outside the United States on a business trip," and as a result he "had to cancel the

---

[1] The following facts are taken from Plaintiff's First Amended Complaint. (Doc. 15 ("FAC").) I assume the factual allegations set forth in the operative pleadings to be true for purposes of this motion. *See Kassner v. 2nd Ave. Delicatessen Inc.*, 496 F.3d 229, 237 (2d Cir. 2007); *see also Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002). My references to these facts should not be construed as a finding as to their veracity, and I make no such findings.

remainder of the trip to travel to New York to turn himself in to the NYPD." (*Id.* ¶ 31.) "Once there, Mr. Powell was easily able to prove he had not committed the thefts." (*Id.* ¶ 32.)

## II.     Procedural History

Powell filed his original complaint in this action on February 19, 2021. (Doc. 1.) After receiving an extension of time, (Doc. 12), The Harvard Club filed a motion to dismiss on April 19, 2021. (Doc. 13.) On May 10, 2021, Powell filed his First Amended Complaint. (Doc. 15.) An amended summons with respect to Scollard was issued on May 25, 2021. (Doc. 18.) After receiving a further extension, (Doc. 19), The Harvard Club filed the operative motion to dismiss the FAC. (Doc. 21.) Powell filed an opposition brief on July 14, 2021, (Doc. 25), and The Harvard Club filed its reply brief on July 29, 2021. (Doc. 29.)

Scollard, after receiving multiple extensions of time, (Docs. 22, 31), filed his motion to dismiss on September 29, 2021, (Doc. 33). Powell filed an opposition brief on November 12, 2021, (Doc. 38), and Scollard filed a reply brief on December 2, 2021, (Doc. 39).

## III.    Legal Standard

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim will have "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* This standard demands "more than a sheer possibility that a defendant has acted unlawfully." *Id.* "Plausibility . . . depends on a host of considerations: the full factual picture presented by the complaint, the particular cause of action and its elements,

and the existence of alternative explanations so obvious that they render plaintiff's inferences unreasonable." *L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 430 (2d Cir. 2011).

In considering a motion to dismiss, a court must accept as true all well-pleaded facts alleged in the complaint and must draw all reasonable inferences in the plaintiff's favor. *Kassner*, 496 F.3d at 237. "A complaint is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference." *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 230 (2d Cir. 2016) (internal quotations and citation omitted). A court "may also consider matters of which judicial notice may be taken" in ruling on a motion to dismiss. *Staehr v. Hartford Fin. Servs. Grp., Inc.*, 547 F.3d 406, 425 (2d Cir. 2008). A complaint need not make "detailed factual allegations," but it must contain more than mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Iqbal*, 556 U.S. at 678 (internal quotation marks omitted). Finally, although all allegations contained in the complaint are assumed to be true, this tenet is "inapplicable to legal conclusions." *Id.*

**IV.   Discussion**

   **A.   Applicable Law**

Powell alleges a claim for false arrest under New York law against The Harvard Club and under 42 U.S.C. § 1983 against Scollard. (FAC ¶ 6.) "The common law tort of false arrest is a species of false imprisonment, an action 'derived from the ancient common-law action of trespass that protects the personal interest of freedom from restraint of movement.'" *Singer v. Fulton Cnty. Sheriff*, 63 F.3d 110, 118 (2d Cir. 1995) (alteration marks omitted) (quoting *Broughton v. State of New York*, 37 N.Y.2d 451, 456 (1975)). To establish a false arrest claim, New York law and § 1983 both require a plaintiff to show that "the defendant intentionally confined him without his consent and without justification." *Dancy v. McGinley*, 843 F.3d 93, 107 (2d Cir. 2016) (citation omitted). The elements of a false arrest claim under both New York

law and § 1983 are the same, *Singer*, 63 F.3d at 118, and they are "(1) the defendant intended to confine him, (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement, and (4) the confinement was not otherwise privileged." *Wright v. Musanti*, 887 F.3d 577, 587 (2d Cir. 2018). In addition, for a § 1983 claim premised on false arrest, a defendant's personal involvement in the alleged constitutional deprivation is a prerequisite to a successful § 1983 claim. *Farid v. Ellen*, 593 F.3d 233, 249 (2d Cir. 2010).

"[P]robable cause is an absolute defense to a false arrest claim." *Jaegly v. Couch*, 439 F.3d 149, 152 (2d Cir. 2006). "If an arresting officer has probable cause to arrest, then the resulting confinement is privileged." *Brown v. City of New York*, No. 19-CV-03375 (LJL), 2023 WL 4548339, at *5 (S.D.N.Y. July 14, 2023). Probable cause exists "when the officers have knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime," and "depends, in the first instance, on state law." *Dancy*, 843 F.3d at 107 (citations omitted). To determine whether probable cause exists, courts consider the "'totality of the circumstances' in light of the facts known to the arresting officer at the time of the arrest." *Creighton v. City of New York*, No. 12 Civ. 7454 (PGG), 2017 WL 636415, at *25 (S.D.N.Y. Feb. 14, 2017) (quoting *Jenkins v. City of New York*, 478 F.3d 76, 90 (2d Cir. 2007)). "The question of whether or not probable cause existed may be determinable as a matter of law if there is no dispute as to the pertinent events and the knowledge of the officers. . . ." *Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996). The defendant bears the burden of proving probable cause. *Savino v. City of New York*, 331 F.3d 63, 76 (2d Cir. 2003).

"Information about criminal activity provided by a single complainant can establish probable cause when the information is sufficiently reliable and corroborated." *Oliveira v.*

5

*Mayer*, 23 F.3d 642, 647 (2d Cir. 1994). It is "well-established that a law enforcement official may have probable cause to arrest based on information the officer obtains from some other person, normally the putative victim or eyewitness." *Creighton*, 2017 WL 636415, at *26 (cleaned up). "When information is received from a putative victim or an eyewitness, probable cause exists unless the circumstances raise doubt as to the person's veracity." *Curley v. Vill. of Suffern*, 268 F.3d 65, 70 (2d Cir. 2001) (internal citation omitted). However, "even if bystander witnesses are considered presumptively reliable, a report of a crime alone will not necessarily establish probable cause." *Oliveira*, 23 F.3d at 647.

As to a false arrest claim against a private defendant who allegedly "causes or directs an arrest or imprisonment in New York, the defendant must have affirmatively induced the officer to act, such as taking an active part in the arrest and procuring it to be made or showing active, officious and undue zeal to the point where the officer is not acting of his own volition." *Curley v. AMR Corp.*, 153 F.3d 5, 13–14 (2d Cir. 1998) (cleaned up); *Savarese v. City of New York*, 18-cv-5956 (LJL), 2021 WL 2784501, at *17 (S.D.N.Y. July 2, 2021) ("to make out a false arrest claim, 'the plaintiff must show that these defendants instigated his arrest, thereby making the police their agents in accomplishing their intent to confine the plaintiff" (alteration marks omitted) (quoting *Carrington v. City of New York*, 201 A.D.2d 525, 527 (2d Dep't 1994)).

A false arrest claim asserted under New York law is subject to a one-year statute of limitations. *Harris v. Town of Islip Hous. Auth.*, 825 F. Supp. 2d 370, 374 (E.D.N.Y. 2011); CPLR § 215(3) ("an action to recover damages for . . . false imprisonment" must "be commenced within one year"). A § 1983 claim for "false arrest [or] unlawful imprisonment" is governed by "New York's three-year limitations period for personal injury actions . . . not the one-year limitations period for actions arising from false imprisonment." *Kevilly v. New York*,

6

410 F. App'x 371, 375 (2d Cir. 2010) (citing *Okure v. Owens*, 816 F.2d 45, 49 (2d Cir. 1987)).

### B. *Application*

#### 1. The Harvard Club

##### a. Statute of Limitations

The Harvard Club's first argument is that Powell is barred by the one-year statute of limitations governing his false arrest claim against it, despite a New York State executive order that, by its terms, "tolled" the operation of the statute of limitations in a manner that would render Powell's claim timely. (*See* Harvard MTD at 5.)[2] In relevant part, the executive order in question states that "any specific time limit for the commencement, filing, or service of any legal action, including but not limited to . . . the civil practice law and rules . . . is hereby tolled from the date of this executive order until April 19, 2020." Exec. Order No. 202.8 (March 7, 2020) (the "Order"). Subsequent executive orders continued the "toll[ing]" through "November 3, 2020." Exec. Order No. 202.67 (Oct. 4, 2020); *Lopez-Motherway v. City of Long Beach*, 2:20-cv-5652 (BMC), 2021 WL 965158, at *7 (E.D.N.Y. Mar. 15, 2021) (collecting executive orders continuing the Order's effect). The Harvard Club argues that the Order could not have tolled the statute of limitations because the Order relies on a statute that only would have authorized it to "suspend[]" the one-year statute of limitations, not to toll it, and that mere suspension would have rendered Powell's claim untimely. (Harvard MTD at 7, 10.)[3]

---

[2] "Harvard MTD" refers to the Harvard Club's Memorandum of Law in Support of Its Motion to Dismiss. (Doc. 21-1.)

[3] A "toll" means that the limitations period "stops running," only to "start[] running again when the tolling period ends, picking up where it left off." *Artis v. District of Columbia*, 138 S. Ct. 594, 601 (2018); *accord Bermudez Chavez v. Occidental Chem. Corp.*, 35 N.Y.3d 492, 505 n.8 (2020). A "suspension" "simply extends the expiration date of the limitations period to a later defined date on the calendar[,] . . . without re-starting the statute of limitations clock at the end of that period." Mark C. Dillon, *An Overview of Tolls of Statutes of Limitations on Account of War: Are They Current and Relevant in the Post-September 11th Era?*, 13 N.Y.U. J. Legis. & Pub. Pol'y 315, 354 (2010) (citing *Randolph v. CIBC World Mkts.*, 219 F. Supp. 2d 399, 402 (S.D.N.Y. 2002); *Scheja v. Sosa*, 4 A.D.3d 410, 410, (2d Dep't 2004)).

"Under New York law," "statutes of limitation" and the rules around them are considered "substantive" and must be applied in federal court. *Thea v. Kleinhandler*, 807 F.3d 492, 497 (2d Cir. 2015) (citations omitted); *Cantor Fitzgerald Inc. v. Lutnick,* 313 F.3d 704, 710 (2d Cir. 2002) ("A state's rules providing for the start and length of the statute of limitations is substantive law."). "In determining the law of the State of New York, 'we will consider not only state statutes but also state decisional law.'" *CSX Transportation, Inc. v. Island Rail Terminal, Inc.*, 879 F.3d 462, 470 (2d Cir. 2018) (quoting *Elliott Assocs., L.P. v. Banco de la Nacion*, 194 F.3d 363, 370 (2d Cir. 1999)).

Here, every appellate state law case of which I am aware that analyzes whether the Order serves to "toll" a statute of limitations has answered that question in the affirmative. *See, e.g.*, *Brash v. Richards*, 195 A.D.3d 582, 585 (2d Dep't 2021); *D.M. v. N.Y.C. Dep't of Educ.*, 19 CIV. 1477 (ER), 2021 WL 4441508, at *3 n.3 (S.D.N.Y. Sept. 28, 2021) (collecting cases speaking to the Order's "tolling effect"). Indeed, in *Brash*, the Appellate Division, Second Department explicitly found that the statute cited in the Order "indicates that the Governor is authorized to do more than just 'suspend' statutes during a state of disaster emergency; he or she may 'alter or modify' the requirements of a statute, and a tolling of time limitations contained in such a statute is within that authority." 195 A.D.3d at 585 (cleaned up). Accordingly, I find the Order tolled the applicable limitations period, which renders Powell's claim timely.

The Harvard Club cites a pair of cases from the Eastern and Northern Districts of New York that choose not to resolve whether the Order tolled the statute of limitations. *See Lopez-Motherway v. City of Long Beach*, 2:20-cv-5652 (BMC), 2021 WL 965158, at *8–9 (E.D.N.Y. Mar. 15, 2021); *Wilson v. Town of Ulster*, 1:20-CV-104 (TJM/DJS), 2021 WL 1946485, at *3 (N.D.N.Y. May 14, 2021). These cases do not provide me with a reason to question *Brash*'s

8

determination of the matter.  First, *Brash* was decided on June 2, 2021, after both of the cases cited by The Harvard Club were decided.  195 A.D.3d 582.  Second, Second Circuit precedent counsels federal courts to look to "New York cases that precisely address the issue" of New York law in question.  *CSX Transp.*, 879 F.3d at 470.  *Brash* is such a New York case, and I see no reason to deviate from its interpretation of the Order.

                                                b.    The Harvard Club's Participation in the False Arrest

As its second argument, The Harvard Club argues that Powell failed to plead conduct meeting the standard for stating a claim against a private defendant who participated in a false arrest effected by a police officer.  (Harvard MTD at 4–6).  The Harvard Club agrees that the governing standard requires a plaintiff to plead facts showing that the private defendant either "affirmatively induced the officer to act," or participated with "active, officious and undue zeal to the point where the officer is not acting of his own volition."  (*Id.* at 11 (quoting *AMR Corp.*, 153 F.3d at 13–14).)  New York law holds that a "defendant" can be said to have "instigated" the arrest of a plaintiff if he does so "with knowledge that there is no lawful basis therefor."  *Warner v. Druckier*, 266 A.D.2d 2, 3 (1st Dep't 1999).  This rule has been followed in a number of federal court cases.  *See, e.g.*, *Pukhovich v. City of New York*, 16-CV-1474(KAM)(PK), 2018 WL 4688943, at *15 (E.D.N.Y. Sept. 27, 2018) ("a private citizen can be liable for false arrest . . . where the private citizen 'intentionally provided false information' to instigate an arrest by law-enforcement officials, or had no reasonable basis for the report.'" (quoting *Biswas v. City of New York*, 973 F. Supp. 2d 504, 519 (S.D.N.Y. 2013))); *Weintraub v. Bd. of Educ. of City of New York*, 423 F. Supp. 2d 38, 58 (E.D.N.Y. 2006), *aff'd sub nom. Weintraub v. Bd. of Educ.*, 593 F.3d 196 (2d Cir. 2010).

       Here, Powell pleads that certain "Harvard Club . . . employees had long standing animus towards [him]" and "intentionally misidentified" him "to the NYPD;" and that they sent

9

"surveillance video to the NYPD" and "participated in the investigation and pointed the NYPD towards Mr. Powell despite the fact that they . . . [] [knew] he was not present at the [Harvard Club] on" the day of the theft. (FAC ¶¶ 22–23.) In short, "[h]ere, [Powell] complains that the [Harvard Club] instigated the arrest . . . and did so based on facts that [its employees] knew were false." *Weintraub*, 423 F. Supp. 2d at 55–56 (E.D.N.Y. 2006). These allegations are sufficient to state a false arrest claim at this stage of the litigation. Indeed, The Harvard Club agrees that one of the cases it cites stands for the proposition that a false arrest claim will lie where a defendant "instigated the confinement" by contacting "police" and making "false statements." (Harvard Club Reply at 7 (citing *Camac v. Long Beach City Sch. Dist.*, No. 09 CV 5309(DRH)(ARL), 2011 WL 3030345, at *7–8 (E.D.N.Y. July 22, 2011). The Harvard Club's argument fails to account for the allegations quoted above, (*see* FAC ¶¶ 22–23), and Powell's allegation that "[t]he Harvard Club knowingly procured his arrest with false information," (*id*. ¶ 24).

### 2. Detective Scollard

Scollard argues that he had both probable cause and arguable probable cause to arrest Powell based on his reasonable reliance on The Harvard Club employees' complaint and identification of Powell as the perpetrator of a theft to the NYPD. (Scollard MTD at 1–2.)[4] Specifically, the FAC pleads that The Harvard Club employees provided "surveillance video to the NYPD" of a man that The Harvard Club employees said had committed the theft on its premises, and that The Harvard Club employees "intentionally misidentified" the man in the video as Powell. (FAC ¶¶ 22–23.)

---

[4] "Scollard MTD" refers to Defendant Gary Scollard's Memorandum of Law in Support of His Motion to Dismiss the Complaint. (Doc. 34.)

Powell argues in opposition that Scollard was in possession of "plainly exculpatory evidence" in the form of a "photo of Mr. Powell" showing him to look nothing like the man pictured in the surveillance video.  (*See* Opp. Scollard at 2, 6.)[5]  This argument fails because he does not actually plead and the FAC does not allege that Scollard ever saw the supposedly exculpatory photograph of Powell.[6]  Instead, Powell pleads in conclusory fashion that the photograph was "exculpatory" and that it was "easily accessible or requestable."  (FAC ¶¶ 26, 29.)

"[I]t is well-established that a law enforcement official has probable cause to arrest if he received his information from some person, normally the putative victim or eyewitness." *Martinez*, 202 F.3d at 634 (citation omitted).  The law does "not impose a duty on [an] arresting officer to investigate exculpatory defenses offered by the person being arrested," only that the officer may not "deliberately disregard facts known to him" which would have cleared the arrestee.  *Jocks v. Tavernier*, 316 F.3d 128, 135–36 (2d Cir. 2003).  As pleaded, Scollard was given an eyewitness account and corroborating evidence identifying Powell, and his only apparent failing was not investigating further.

While not necessary to my ruling, I note that Powell's pleadings further bolster this conclusion, because this was not a case where Scollard would have seen Powell before effecting the "arrest."  Rather, Powell pleads that he was "arrested" while outside of the United States; and as a result, he had to "travel to New York to turn himself in," and "[o]nce there . . . was easily able to prove he had not committed the thefts."  (FAC ¶¶ 27, 31–32.)  In other words, Powell

---

[5] "Opp. Scollard" refers to Powell's Opposition to Scollard's Motion to Dismiss.  (Doc. 38.)

[6] Powell also represents that the photograph in question was from 2006, (Opp. Scollard at 2 n.1), which Scollard points out renders it thirteen years out of date from the August 2019 time of the surveillance video, (Doc. 39, at 2).

11

pleads that Scollard caused an arrest warrant to issue, but that once Powell met with the police in person, he was "easily able" to exculpate himself. (*See id.*) As such, even assuming that simply looking at Powell would be enough to demonstrate he was not the man in the surveillance video, Powell has pleaded that Scollard had no ability to look at him in person until, at earliest, the time when Powell turned himself in to the NYPD. I see no way to read Powell's pleadings as supporting an inference that Scollard ignored "specific, readily-verifiable" material that would have shown Powell's innocence prior to when Powell turned himself in to the NYPD. *Cf. Russo v. City of Bridgeport*, 479 F.3d 196, 209 (2d Cir. 2007).

## V.     Conclusion

For the foregoing reasons, The Harvard Club's motion to dismiss is DENIED, and Scollard's motion to dismiss is GRANTED.

The Clerk of Court is respectfully directed to terminate the open motions on the docket.

SO ORDERED.

Dated: September 14, 2023
       New York, New York

*[signature]*
Vernon S. Broderick
United States District Judge